**David L. HAUG, Appellant,**

v.

**G. Charles FRANKLIN, et al.,
Appellees.**

**No. 14273.**

Court of Appeals of Texas,
Austin.

April 3, 1985.

Rehearing Denied May 1, 1985.

David L. Haug, Houston, pro se.

Jim Mattox, Atty. Gen., Philip Durst, Asst. Atty. Gen., Austin, for appellees.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

POWERS, Justice.

David L. Haug appeals a take-nothing judgment rendered against him by the trial court in Haug's suit for injunctive and declaratory relief, brought against G. Charles Franklin individually and in his capacity as vice-president for business affairs for the University of Texas at Austin. We will reform the judgment below and affirm it as reformed.

Haug is a recent graduate of the Law School of the University of Texas at Austin, having also taken an undergraduate degree there.[1] While an undergraduate and during his attendance at the Law School, Haug accumulated a large number of traffic or parking citations issued by University security personnel. *See* Tex. Educ.Code Ann. § 51.203 (1972). In January 1982, he was refused re-admission for the spring semester because he had not paid the charges claimed by the University for his violations of its parking and traffic regulations. He immediately filed the present suit seeking permanently to enjoin Franklin, and those under his control, from interfering with his re-admission or otherwise penalizing him because of his failure to pay the charges claimed by the University, contending the charges were unlawful because in violation of the applicable Uni-

---

1. Haug did not file a statement of facts in this Court. Numerous factual contentions made by him cannot be assumed to be true, while certain factual statements in his brief are not chal-lenged by Franklin. We base our opinion here upon the latter, Haug having invoked our discretion in that regard. *See* Tex.R.Civ.P.Ann. 419 (1967).

versity traffic regulations, in violation of the due-process requirements of the State and Federal Constitutions, and in excess of the statutory powers delegated to the University by the Legislature. He prayed as well for a temporary injunction and for any "declaratory relief to which [he] is legally entitled."

The trial court granted Haug's application for temporary injunction. He was admitted to the Law School for the spring semester of 1982 and has since graduated, taken the bar examination, and received his license to practice law. After his readmission to the Law School, under the trial court's temporary injunction, he was issued three additional citations for violation of the University's traffic and parking regulations. He failed or refused to pay the charges claimed therein, in consequence of which the University refused and still refuses to issue a diploma evidencing his graduation from the Law School. (Haug was enabled to receive his law license because the University evidently issued a "certificate" that he had completed the course of study required for a law degree.) Haug pressed his suit to final hearing, claiming the University's refusal to issue the diploma is unlawful because: (1) the underlying traffic charges are unlawful for the reasons mentioned above; and (2) withholding a diploma is not a sanction permitted by University regulations to be imposed for a failure to pay traffic charges incurred thereunder.

■ Haug raises on appeal several matters that are now moot—for example, whether the University's refusal to re-admit him is an authorized sanction for his failure to pay the traffic charges. Moreover, other aspects of his contentions are simply not determinable here because the appellate record does not include a statement of facts. We shall therefore address only those aspects of his contentions which are, in our view, properly determinable on appeal in the circumstances.

## THE REGULATIONS IN QUESTION

Before turning to Haug's contentions, however, we should note the pertinent parts of the University's traffic and parking regulations, under which it claims the unpaid charges. The regulations were promulgated by the Board of Regents June 10–11, 1982. They provide that vehicles may not enter and park on the campus except under permits issued by the University and only in accordance with the terms of the regulations. Section VII of the regulations lists 23 "offenses" against the terms of the regulations and adjacent to each is stated a money "charge" for that offense. The "charge" is either $5, $10, or $15, depending upon the offense.

Section VIII, entitled "Enforcement," provides for several matters not necessary to describe at length. Suffice it to say that the regulations provide for a dual system of enforcement initiated by citations issuable by security personnel holding commissions issued by the University. One such system is enforcement by administrative proceedings in the University and the other is enforcement by judicial proceedings in a municipal or justice court. Haug was issued citations returnable in the administrative process and not to the municipal or justice court.

In the administrative-enforcement process, the citation constitutes *prima facie* evidence that the offense occurred as therein set forth and that it was committed by the individual holding the permit affixed to the vehicle—Haug in this case. Haug was, under the regulations, entitled to "appeal" the citation to a panel composed of individuals appointed from the faculty, staff, and student body of the University. We will accept Haug's contention that none are legally trained. The regulations provide that the panel may set aside the citation on any ground stated by the "appellant" in writing which renders the citation "improper or inequitable." While the citation remains *prima facie* evidence of the violation, the "appellant" may file in support of his contentions any statements or materials deemed appropriate by him, and he may appear personally before the panel. He is entitled there to present argument,

his own testimony, and the testimony of witnesses, all as the "appellant" "deems appropriate." The panel may, after hearing, cancel the citation or order payment of part or the whole of the charge stated in the regulations for the offense. The decision of the panel is final. Haug did not request a hearing under this part of the regulations.

Another part of the regulations provides for a different kind of administrative hearing in the event one fails to pay the charges imposed by the regulations or by any determination of the panel mentioned in the preceding paragraph. When such charges are not paid, the University may send a letter to the individual in whose name the charges are recorded. The letter requires payment of the charges unless a hearing is requested by the addressee within twelve days. If no hearing is requested, the University claims in the regulations a power to impound the vehicle in question, bar the registrant's re-admission to the University, or withhold his grade and academic transcript, in accordance with the "Regents' Rules and Regulations, Part One, Chapter VI, Section 9 . . . ." (The "Regents' Rules and Regulations" mentioned here apparently also authorize withholding of the registrant's diploma as an additional sanction, a matter discussed below.) With reference to this second administrative hearing, the regulations provide that it is not an "appeal" from any determination made by the panel mentioned above in reference to the citations themselves. Rather, the second hearing "is a limited hearing to

allow the individual an opportunity to show that the vehicle in question was not owned, registered or used by the individual or to show that the individual . . . does not have unpaid Parking and Traffic charges." Haug requested such a hearing, but failed to appear.

■ Under the regulations, judicial review is not expressly provided in reference to a decision in either of the hearings described above. We note, however, that judicial review is available to contest official action that impinges upon constitutional rights. *See generally Foley v. Benedict*, 122 Tex. 193, 55 S.W.2d 805 (1932); *City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788 (1951).

## HAUG'S CONTENTIONS ON APPEAL

■ 1. Haug contends the underlying traffic charges were imposed upon him in violation of the constitutional guarantees of procedural due process of law.[2] Specifically, he argues that the administrative procedure by which the charges were imposed, as established by the University's traffic and parking regulations, lacked the safeguards of a criminal proceeding in a justice or municipal court, or a sufficient number of them, to satisfy the requirement of fundamental fairness. He points to such things as the absence of a presumption of innocence and a legally trained tribunal. We disagree with his contention.

■ The regulations, as written and presumably applied, provide for a hearing

---

**2.** The legal "process" contemplated in the constitutional guarantees of "due process of law" is not an end in itself. *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Rather, the guarantees have the purpose of securing liberty and property interests against action by government that is fundamentally unfair. *Id.* Haug raises no point of substantial due process of law. *See Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

"Due process of law" is not a technical concept having a fixed content unrelated to time, place, and circumstances; hence no hard and fast rule can be laid down as to what is, or is not, "due process of law." The term implies, instead, *fundamental fairness in the context of the particular case.* What constitutes "fundamental fairness"

in context is an inference drawn from the totality of the facts in the particular case in light of reason, precedent, history, the private interest at stake, the government's interest, and the risk that the procedures employed will lead to erroneous decisions. *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). While "fundamental fairness" may require a notice and hearing before government acts upon an individual's liberty or property interest, this does not *require* a judicial hearing or forbid a hearing in another organ of government. *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963).

at the request of the individual to whom the citation is issued. Under the regulations, the individual may avoid the prescribed charges for any reason of fact or law, and even for any reason of *propriety* or *equity*, the latter being a benefit not available in a criminal proceeding and one corresponding to the nature of the tribunal. The hearing, while in the nature of a show-cause hearing, is open and permits argument and evidence. The maximum charge is far less than the $200 fine possible to be imposed in the alternative proceedings in a municipal or justice court. *See* Tex.Educ. Code Ann. §§ 51.201, 51.202(b) (1972). The regulations are published and clear. We see *in the regulations* nothing which suggests a greater risk of error in an administrative proceeding as opposed to one in municipal or justice court. The amount of the charges possible to be imposed is small, that is to say, the private interest at stake is either $5, $10, or $15, depending upon the offense. In contrast, the University's interest in traffic and parking on a crowded campus is great indeed. Any additional procedural safeguards—for example the legally trained hearing officers suggested by Haug—would be expensive to implement, a hindrance to flexibility, and unnecessary in light of the regulatory framework generally, and of *comparatively* little value; indeed, their implementation might inhibit in various ways the equitable and other benefits of the less formal, inexpensive hearing and method of proceeding which the regulations provide in favor of the individual receiving a citation. We therefore hold as follows: (a) Haug waived any due process claims by requesting and using the privilege of driving and parking on campus under a permit issued by the University and under the regulations, a provision of which he cannot now attack as being unconstitutional. *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); (b) the administrative hearings provided by the regulations, on balance, meet the minimum requirements of fundamental fairness. *Dixon v. Love,* 431 U.S. 105,

112–13, 97 S.Ct. 1723, 1727–28, 52 L.Ed.2d 172 (1977); *Ingraham v. Wright,* 430 U.S. 651, 674–79, 97 S.Ct. 1401, 1414–16, 51 L.Ed.2d 711 (1977).

■ 2. Haug next contends the underlying traffic charges are in violation of the University's traffic and parking regulations. He *argues*, however, that these regulations *do not authorize* the sanction of withholding a student's diploma, but rather provide for other sanctions. He does not contest that the citations issuable under the regulations, and presumably those which he received, list as a possible sanction the withholding of his diploma. Moreover, another regulation of the Board of Regents, we are told, specifically authorizes this sanction for unpaid traffic charges.[3] (The regulation is not included in the transcript; nor, of course, is it before us by way of a statement of facts.) And the traffic and parking regulations do provide expressly for "disciplinary action to be taken against ... students who fail to abide by [the] regulations." We assume in aid of the judgment, there being no statement of facts or other evidence of the content of the other regulation, that withholding of the diploma is within the term "disciplinary action." For these reasons, we overrule Haug's contention that the sanction is not authorized by the traffic and parking regulations themselves.

■ 3. Haug contends the money charges imposed for traffic "offenses" are in excess of the statutory powers of the University. We conclude differently. The Board of Regents of the University of Texas System is authorized and directed to govern, operate, and maintain the University of Texas at Austin. Tex.Educ.Code Ann. § 65.31 (1972 & Supp.1985). Included in its statutory powers is a power "to promulgate and enforce ... rules and regulations for the operation, control, and management of" the University. *Id.* Traffic and parking regulations are, under § 51.202 of the code, *specifically* authoriz-

---

**3.** The "Regents' Rules and Regulations, Part One, Chapter VI, Section 9 ..." referred to in

another part of the regulations dealing with enforcement.

ed to be promulgated by the Regents. In addition, § 54.503, entitled "Student Services Fees," provides that the Board may charge and collect the fees as defined therein. The statutory definition contained in § 54.503 does *not* include charges for traffic and parking violations. However, another subsection of § 54.503 provides unequivocally that the Board

> may fix and collect a reasonable fee or fees for the enforcement and administration of parking or traffic regulations approved by the board for the institution.

The title of the section—"Student Services Fees"—does *not* limit the scope of the statute to such fees only. *See* the Code Construction Act, Tex.Rev.Civ.Stat.Ann. art. 5429b–2, § 3.04 (Supp.1985). That other parts of the code *also* provide for enforcement in municipal or a justice court,[4] by *judicial* proceedings in those courts, does not contradict the other statutes that empower the University to provide for enforcement of its parking and traffic regulations through administrative proceedings and civil penalties. Nothing in the code purports to make either form of proceeding or enforcement exclusive; and indeed, it is obvious that they were intended to be discretionary alternatives available to the University. We overrule Haug's contentions to the contrary.

4. Finally, Haug contends the "take nothing" judgment is erroneous because in it the trial court omits to declare the rights and obligations of the parties. Calvert, *Declaratory Judgments in Texas*, 14 St. Mary's L.J. 1, 14–16 (1982). We observe that Haug's request for declaratory judgment is in the form of a handwritten interlineation in his prayer for relief, where he requests as additional relief money damages and "declaratory relief." Nothing in his petition suggests to the trial court the subject of such relief—for example, his right to a diploma or the constitutionality of the parking and traffic regulations of the University. Moreover, the trial court's take-nothing judgment clearly and correctly denies Haug's cause of action for perma-

nent injunctive relief, the only cause of action alleged in the body of his petition. We shall, however, reform the judgment below to declare the rights and obligations of the parties, and remove any uncertainty, to the extent permitted by the circumstances of the case, including Haug's rather uncertain pleading and the absence of a statement of facts. We reform the judgment to declare that Haug has not been deprived of due process of law, and the withholding of his diploma is an authorized sanction in the circumstances and under the rules and regulations of the University and the applicable statutes.

As reformed, we affirm the judgment below.