Reversed and Remanded; Memorandum Opinion filed May 1, 2003









Reversed and Remanded; Memorandum Opinion filed May 1,
2003.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00785-CV

____________

 

CAPTAIN SHERIFF SAUDI, Appellant

 

V.

 

CAPTAIN IVO BRIEVEN, Appellee

 



 

On Appeal from the 129th District Court

Harris County, Texas

Trial Court Cause No. 99-06515

 



 

M E M O R A N D U M   O
P I N I O N

Appellant, who was the plaintiff below, sought damages in the
trial court for libel, slander, intentional interference with employment
relations, and intentional infliction of emotional distress.  The trial court granted the
appellee/defendant=s motion for summary judgment.  Appellant seeks review, contending in a
single point of error that the court below erred in granting summary
judgment.  We reverse and remand to the
trial court.








Although we assume the parties are fully acquainted with the
underlying facts of this dispute, we are not. 
The record seems to have been prepared with no consideration of an
appeal.  It consists of a series of
seemingly unrelated details and assertions. 
We ought not have to remind the parties that we
have no mystical ability to divine the facts, uncover the relationship of the
parties, or discern the nature of their dispute apart from the appellate
record.  But, here, the record is largely
incoherent.  Thus, our understanding of
the facts is largely shaped by speculation.

It appears, though we cannot be certain, that this dispute
arose during business transactions between three companies, i.e., I. B.
Marine Services, Industrial Material Corporation, and American Eagle
Tankers.  I. B. Marine Services provides
some type of operational services to tankers operating in the Gulf of
Mexico.  American Eagle Tankers is a
customer of I. B. Marine Services and, thus, presumably operates one or more
tankers in the Gulf of Mexico.

Although never admitted in the plaintiff=s pleadings, nor established in the
summary judgment evidence, both parties state in their briefs that Captain Ivo
Brieven is the owner of I. B. Marine Services.[1]  Captain Sheriff Saudi was employed as a “mooring
master” by American Eagle Tankers.  We
assume that as a mooring master, Saudi=s duties related to anchoring,
securing, or confining vessels in a particular station.








In 1998, Captain Ivo Brieven was informed by his Port
Engineer that someone matching the description of Captain Sheriff Saudi had
purchased hooks from Industrial Material Corporation.    The record does not disclose for what
purpose the hooks were purchased from Industrial Material Corporation or how
they may relate, if they do, to the services provided by I. B. Marine to
American Eagle Tankers.  However, the
purchase appears to have been charged to the account of I. B. Marine Services without
its authorization.  Captain Brieven
subsequently telephoned Captain Ernesto Violetta, Vice-President of Operations
for American Eagle Tankers, to try to work out a procedure by which mooring
masters could purchase equipment from Industrial Material Corporation and still
give notice to Brieven so he could properly track which customer had made any
given purchase.

Captain Saudi alleges that Captain Brieven=s representation intimated that Saudi
may have stolen some of the materials. 
He also contends that Brieven=s statements were intended to cause
him harm and were motivated by malice.

In his motion for summary judgment, Brieven asserted the
affirmative defense of qualified privilege against Saudi=s slander and libel claims.  Brieven further alleged he was entitled to
summary judgment on Saudi=s claim of intentional interference with employment relations
because Saudi, by his own admission, was still employed by American Eagle
Tankers and had incurred no actual damages. 
Finally, Brieven claimed he was entitled to summary judgment on Saudi=s claim of intentional infliction of
emotional distress because even if Saudi=s allegations were true, they were
not so extreme and outrageous as to support a claim of intentional infliction
of emotional distress.  The trial court
granted summary judgment as to all claims and held that Saudi should take
nothing in his suit.

For a party to prevail on a traditional motion for summary
judgment, he must conclusively establish the absence of any genuine question of
material fact and that he is entitled to judgment as a matter of law.  Nixon v. Mr. Property Mgmt Co., Inc.,
690 S.W.2d 546, 548 (Tex. 1985).  In
deciding whether there is a disputed material‑fact issue preventing
summary judgment, we take evidence favorable to the non‑movant as
true.  Id. at 549.  Moreover, every reasonable inference must be
indulged in favor of the non‑movant and any doubts resolved in his
favor.  Id.  Once the movant has established a right to
summary judgment, the non‑movant has the burden to respond to the motion
for summary judgment and present to the trial court any issues that would
preclude summary judgment.  City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979).








Libel is a defamation expressed in written or other graphic form
that tends to injure a living person=s reputation and thereby expose the
person to public hatred, contempt, ridicule, or financial injury, or to impeach
any person=s honesty, integrity, virtue, or
reputation.  Rodriguez v. NBC Bank,
5 S.W.3d 756, 766 (Tex. App.CSan Antonio 1999, no pet.). 
Slander is a defamatory statement that is orally communicated or
published to a third person without legal excuse.  Randall’s Food Mkts., Inc. v. Johnson,
891 S.W.2d 640, 646 (Tex.1995).  However,
a qualified privilege exists where the writing or statement is made in good
faith on any subject matter in which the author has an interest or with
reference to which he has a duty to perform to another person having a
corresponding interest or duty.  East
Tex. Med. Ctr. Cancer Inst. v. Anderson, 991 S.W.2d 55, 60 (Tex. App.CTyler 1998, pet. denied).  The privilege does not apply to the
furnishing of such information to others not so interested.  See Dun & Bradstreet, Inc. v. O'Neil,
456 S.W.2d 896, 898B99 (Tex.1970). 
Moreover, the speaker abuses the privilege if he makes a statement with
actual malice. Grant v. Stop‑N‑Go Mkt. of Tex., Inc., 994
S.W.2d 867, 874 (Tex. App.CHouston [1st Dist.] 1999, no writ).

Here,
Brieven supported his motion for summary judgment with an affidavit in which he
stated, in pertinent part:

My Port Engineer, David Gilbert, received information,
which he relayed to me, that an individual matching Capt. Saudi=s description had purchased goods from IMC.  I then contacted Capt. Ernesto Violetta of
American Eagle Tankers, Capt. Saudi=s
supervisor, to establish a procedure by which mooring masters may purchase
materials.  This procedure was designed
to prevent me from receiving invoices for materials which I had no knowledge of
who had placed the order.

The concerns raised by my sincere belief regarding
Capt. Saudi=s conduct were then discussed during a meeting on or
about June 18, 1998.  At this meeting, I
raised questions regarding Capt. Saudi=s
actions which I reasonably believed were true. 
Any statements regarding Capt. Saudi=s
actions were expressed only to individuals which had a direct interest in the
subject matter and whom I believed was [sic] entitled to know.








None of my statements were made with malice or ill
will.  These concerns were brought up in
good faith, based on my reasonable belief of the truthfulness of the
information.  I did not know any of the
statements to be false nor did I make any statements with reckless disregard as
to whether they were false.

Saudi argues that Brieven=s affidavit fails to establish the
qualified defense of privilege because it is no business of Brieven whether
American Eagle Tankers authorized Saudi to purchase equipment from Industrial
Material Corporation.  If we assume,
however, that Brieven is the owner of I. B. Marine Services, then Saudi=s interpretation of Brieven=s affidavit is unreasonable.  When read in context, it is clear that
invoices generated by equipment purchases from Industrial Material Corporation
were being forwarded to I. B. Marine Services for payment.  While it would undoubtedly have been helpful
if Brieven had provided more details, it is apparent from his affidavit that
American Eagle Tankers, Industrial Material Corporation, and I. B. Marine
Services had some type of interlocking business relationship.  Thus, a purchase of equipment from Industrial
Material Corporation made without Brieven=s authorization generated profound
clerical problems because I. B. Marine Services had no way knowing which client
was responsible for the purchase. 
According to Brieven, he contacted American Eagle Tankers to try to work
out a procedure that would permit its mooring masters to make purchases from
Industrial Material Corporation, but still permit I. B. Marine Services to
properly track the purchase and assign it to the proper customer, i.e.,
American Eagle Tankers.  While Brieven=s affidavit is lacking in many
details, we find it minimally sufficient to prove each essential element of his
affirmative defense, i.e., the communication was made in good faith on a
subject which Brieven had an obvious business interest to a person having a
corresponding interest or duty. 








Once the defendant establishes the communication is
privileged, the plaintiff may avoid summary judgment by either (1) offering
evidence raising a material fact issue on some element of the defense[2]
or (2) showing the privilege was lost.[3]  The privilege is lost if the communication
was motivated by malice.  See Pioneer
Concrete of Tex., Inc. v. Allen, 858 S.W.2d 47, 49 (Tex. App.CHouston [14th Dist.] 1993, writ
denied).

In
response to Brieven=s motion for summary judgment, Saudi submitted two affidavits.  On the issue of  privilege, Captain Ernesto Violetta stated
the following in his affidavit:

In September, 1998, Captain Ivo Brieven placed a
telephone call to me to discuss Captain Sheriff Saudi.  Captain Brieven told me that Captain Saudi
had ordered some equipment (hooks) from Industrial Material Corporation in
Galveston, Texas, without authorization of IB Marine.  . . . I understood Captain Brieven to be
telling me that Captain Saudi, one of American Eagle Tanker=s employees, had ordered some equipment on the account
of IB Marine without authority.  . . .
This was not the first time that Captain Brieven had made reports to me
concerning Captain Sheriff Saudi.  . . .
I took Captain Brieven=s word for granted and reprimanded Captain Saudi.  I spoke to Captain Saudi harshly, and began
to lose trust in him due to Captain Brieven=s
reports to me concerning him.  Captain
Saudi denied the allegation persistently, to the point that I had to call
Captain Brieven to ask him if he was sure of his allegation, and Captain
Brieven said, “Yes, I am sure.  Sheriff
is a liar.  He is lying through his
teeth.”

 

Nothing in
Captain Violetta=s affidavit suggests the communication at issue was made to
any person who did not have an interest or duty in discovering whether Saudi
was making unauthorized purchases of equipment from Industrial Material
Corporation.








Saudi
also tendered his own affidavit which states, in pertinent part:

Captain Ivo Brieven made false accusations against me
to my employer, to third parties and to [sic] “boat crew” in an effort to
create hate and resentment between “boat crew”, with whom I had to work, and
me, in an attempt to interfere with my work and with my employment
relations.  . . . Captain Ivo Brieven,
and his agents working under him, encouraged co-workers to attempt to sabotage
my work, and then to report to him any incident that he would later exaggerate
and report to my employer.  . . . Specifically,
on various occasions, some in my presence, and others in my absence, Captain
Ivo Brieven told Captain Ernesto Violetta that:

“Sheriff is instigating a
revolution against me.”

“Sheriff wakes up the crew at 4:00
a.m. to jog on the ship.”

“Sheriff called the surveyor, Pete, a stupid American.”

“Sheriff wakes up the crew at 4:00
a.m. to cook him a steak.”

To constitute competent summary judgment evidence, affidavits
must be made on personal knowledge, set forth facts as would be admissible in
evidence and show affirmatively that the affiant is competent to testify to
matters stated therein.  Krishnan v.
Law Offices of Preston Henrichson, 83 S.W.3d 295, 299 (Tex. App.CCorpus Christi 2002, pet.
denied).  While Saudi specifically
alleges that Brieven made accusations “to third parties” and the “boat crew,”
these allegations appear to be hearsay. 
Saudi makes a concluding assertion in his affidavit that “all of the
facts alleged . . . are true and correct and are within my own personal
knowledge,” but this statement is specifically rebutted by his admission that
some of Brieven=s remarks were made in his presence and some were made in his
absence.  Having admitted that
unspecified portions of the affidavit are hearsay, we must next consider
whether the entire document has lost its probative value because hearsay
statements in affidavits may not be made the basis of a summary judgment.  Natural Gas Clearinghouse v. Midgard
Energy Co., 23 S.W.3d 372, 380 (Tex. App.CAmarillo 2000, pet. denied).








Since September, 1983, hearsay statements have had probative
value if no objection is made to their admission.  Tex.
R. Evid. 802; El Paso Associates, Ltd. v. J.R. Thurman & Co.,
786 S.W.2d 17, 19 (Tex. App.CEl Paso 1990, no writ). 
Here, Brieven filed a written objection to appellant=s affidavit in the court below
complaining of hearsay and conclusory statements.  However, the trial court made no ruling on
Brieven=s written objection, and he voiced no
objection to the trial court=s failure to rule. 
Absent a ruling or a refusal to rule on Brieven=s objection, his hearsay contention
is waived.  Dolcefino v. Randolph,
19 S.W.3d 906, 927 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).[4]

Although no model for emulation, the operative statements in
Saudi=s affidavit are not conclusory.  He sets forth specific statements he claims
were falsely made by Brieven to third parties. 
While the alleged statements do not appear to be particularly
defamatory, Saudi=s affidavit is sufficient to create a fact issue.

The
second prong of appellant=s attack upon the defense of privilege is the assertion that
Brieven=s statement was made with
malice.  Proof that a statement was
motivated by actual malice existing at the time of publication defeats the
privilege.  Randall=s Food Mkts., 891 S.W.2d at 646.  On the issue of malice, Violetta said, in
pertinent part:

American Eagle Tankers=
employees do not make purchases on IB Marine accounts.  Captain Brieven knew that when he accused
Captain Saudi of making purchases without authority on an IB Marine account. .
. . I believe that Captain Saudi=s
attempt to implement American Eagle Tankers= safety
policy, to improve overall operational standards, and to implement AET=s cost and quality control policy, for which Captain
Saudi and the other STS Superintendents were in charge, faced a lot of
resistance from Captain Ivo Brieven, and the boats= crew.








This affidavit, however, does not show proof of malice.  Violetta=s statement that Brieven knew Saudi
did not make purchases on the I. B. Marine account is wholly conclusory.  A conclusory statement is one that does not
provide the underlying facts to support the conclusion.  Conclusory statements in affidavits are not
proper as summary judgment proof if there are no facts to support the
conclusions.  Dolcefino v. Randolph,
19 S.W.3d 906, 930 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  Moreover, while Violetta sets forth a
possible motive for ill will, actual malice is not ill will;  it is the making of a statement with
knowledge that it is false, or with reckless disregard of whether it is
true.  Randall=s Food Mkts., 891 S.W.2d at 646;  Hagler v. Proctor & Gamble Mfg. Co.,
884 S.W.2d 771, 772 (Tex.1994) (per curiam). 
Reckless disregard is defined as a high degree of awareness of probable
falsity, for proof of which the plaintiff must present sufficient evidence to
permit the conclusion that the defendant in fact entertained serious doubts
about the truth of his statement.  Carr
v. Brasher, 776 S.W.2d 567, 571 (Tex.1989). 


Regarding
the same issue, Saudi said in his affidavit:

Captain Ivo Brieven either made up the story
concerning the unauthorized purchases by me, or he never attempted to verify
the truth or falsity of the allegations against me before passing them on to my
supervisor.  . . . Captain Ivo Brieven
either knew or should have known that I did not purchase anything from
Industrial Material Corporation.  I had
never purchased anything on IB Marine=s
account in the past.  . . . Captain
Brieven knew that it was an IB Marine employee who had ordered the hooks when
he accused me of the unauthorized purchase. 
Captain Brieven also knew that all purchases, if any, made by AET
employees went through American Eagle Tankers and not through him.

 

Again, this portion of the affidavit is also conclusory.  It provides no underlying facts within the
affiant=s personal knowledge to support his
conclusions.

Finally,
appellant offers a copy of a handwritten letter, purportedly written by the
owner/manager of Industrial Material Corporation, which states:








Confirming that untill [sic]
this day 9-23-98 Myself or Mike Betz have never dealt with personally or by
phone with either Capt. Sheriff or O.P. 
Any purchases for the M/V Endeavor are bought by I. B. Marine only.  No one in our place of buisness
[sic] has ever met either of these gentelmen [sic].

 

Even if we could consider this unsworn assertion, it does little more
than show Brieven was mistaken.  It
constitutes no evidence that Brieven knew the statement was false or that he
made it with reckless disregard regarding the truth of the statement.

Accordingly, while the trial court did not err in finding no
proof of malice, it did err in implicitly finding no proof that defamatory
statements were made to third parties. 
In other words, we find there is a fact issue presented in the summary
judgment record regarding Brieven=s defense of qualified business
privilege.

Saudi next contends the trial court erred in granting summary
judgment on his claim of intentional interference with employment
relations.  We assume, as Brieven did,
that Saudi=s claim is actually a claim of
tortious interference with a contract. 
The elements of tortious interference with contractual relations
are:  (1) an existing contract subject to
interference, (2) a willful and intentional act of interference with the
contract, (3) that proximately caused the plaintiff=s injury, and (4) caused actual
damages or loss.  Prudential Ins. Co.
of Am. v. Financial Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  Brieven argues that Saudi=s claim fails because he is still
employed by American Eagle Tankers and, thus, can show no actual damages
stemming from Brieven=s statement.  We agree.








Although Saudi alleged as damages his expense of traveling to
Galveston to clear up the allegation, the loss of his good reputation, and
mental anguish, the basic measure of actual damages in an action for tortious
interference with contract is the same as the measure of damages for breach of
the contract at issue.  Anderson,
Greenwood & Co. v. Martin, 44 S.W.3d 200, 219 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  In other words, in assessing
actual damages, the jury should attempt to put the plaintiff in the same
economic position he would have been in had the contract not been
breached.  Id.  Here, the contract at issue, i.e.,
Saudi=s contract of employment, was never
breached.  Accordingly, Saudi has no
actual damages with regard to his claim of tortious interference with a
contract.

Because the summary judgment record presents a fact issue
regarding whether Brieven made defamatory statements to third parties, the
judgment of the trial court is reversed and the cause is remanded for further
proceedings consistent with this opinion.

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

Judgment rendered
and Memorandum Opinion filed May 1, 2003.

Panel consists of
Justices Yates, Hudson, and Frost.











[1]  Although the
record does not support or refute this assumption, AIn a civil case, the court will accept as true the
facts stated [in the brief] unless another party contradicts them.@  Tex. R. App. P. 38.1(f).





[2]  See Bates
v. Dallas Indep. Sch. Dist., 952 S.W.2d 543, 548 (Tex. App.CDallas 1997, writ denied) (holding the plaintiff can
bar the defendant=s motion for summary judgment by presenting evidence
that creates a fact question on at least one element of each affirmative
defense advanced by the defendant);  Toonen
v. United Serv. Auto. Ass=n, 935 S.W.2d 937, 940 (Tex. App.CSan Antonio 1996, no writ.) (holding as a general
rule, a party seeking to avoid a summary judgment by virtue of an affirmative
defense bears the burden of raising a material issue of fact on that defense). 





[3]   See Denton Publ=g
Co. v. Boyd, 460 S.W.2d 881, 884 (Tex.1970) (holding
once the defendant shows the conditional privilege exists, the burden is then
on the plaintiff to show that the privilege is lost).





[4]  We readily
acknowledge that A[t]he general rule requiring the party asserting the
objection to obtain a ruling or a refusal to rule in order to preserve error,
presents special challenges in summary judgment practice, where motions can be
and often are decided without oral hearing or any other face‑to‑face
encounter with the trial judge.@  Id. at
925.