In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00010-CV
______________________________


KIMBERLY T. DANIELS AND WILLIE DANIELS, Appellants
Â 
V.
Â 
CHRISTOPHER A. YANCEY, M.D., AND 
DIAGNOSTIC CLINIC OF LONGVIEW, P.A., Appellees


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law
Gregg County, Texas
Trial Court No. 2002-2120-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â Kimberly T. and Willie Daniels appeal from a take-nothing judgment in favor of Christopher
A. Yancey, M.D., and Diagnostic Clinic of Longview, P.A (collectively, Yancey). The Danielses
complain on appeal that the trial court erred in excluding certain testimony from the jury's
consideration. We deny all points of error and affirm the judgment of the trial court.
Factual Background
Â Â Â Â Â Â Â Â Â Â Â Â Dr. Christopher Yancey performed a hysterectomy on Kimberly Daniels. Following the
surgery, Kimberly began to suffer from abdominal pain and bowel problems. She returned to the
hospital. Dr. Lee Merritt, in consultation with Dr. Yancey, determined that it was necessary to
remove a section of Kimberly's small intestine to cure her affliction. This surgery, in turn, caused
Kimberly further medical problems.
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses allege that Dr. Yancey perforated Kimberly's small intestine during the
hysterectomy, thereby breaching the proper standard of care. The Danielses claim that this alleged
breach of duty caused Kimberly's subsequent medical problems. This claim is the basis of the
underlying lawsuit.
Issues
Â Â Â Â Â Â Â Â Â Â Â Â The trial court prohibited the Danielses' expert witness, Dr. Robert Kovac, from testifying
about his observations regarding certain pathology slides relating to Kimberly's surgery. Dr. Kovac
is a member of the American Board of Obstetrics and Gynecology. The trial court also excluded
testimony regarding a statement purportedly made by Dr. Merritt to Kimberly before the second
surgery. These two rulings by the trial court form the basis of the Danielses' appeal. 
Motion to Limit Testimony
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses assert that the trial court erred in granting Yancey's motion to limit the
testimony of Dr. Kovac because the motion was untimely. In support of this, the Danielses contend
the motion was not filed within the time limitations prescribed by the former Tex. Rev. Civ. Stat.
Ann. art. 4590i, Â§ 14.01(e). See Act of May 5, 1995, 74th Leg., R.S., ch. 140, Â§ 2, Tex. Gen. Laws
988, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, Â§ 10.09, Tex. Gen. Laws 884 (current
version at Tex. Civ. Prac. & Rem. Code Ann. Â§ 74.401(e) (Vernon 2005)).


 We hold that the
Danielses failed to raise this issue at the trial court level and thereby waived any possible error on
appeal.
Â Â Â Â Â Â Â Â Â Â Â Â As a prerequisite to presenting a complaint for appellate review, the record must show that
the complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P.
33.1(a). The record must also show that the trial court ruled or refused to rule on the complaint. If
the trial court refused to rule on the complaint, the record must show that the complaining party
objected to the refusal. Id.
Â Â Â Â Â Â Â Â Â Â Â Â It is clear from the record that, within the motion to limit expert testimony, and during the
hearing on the motion, there was but one issue in contention: whether the Danielses' expert witness,
Dr.Â Kovac, was qualified to testify about pathology slides.
Â Â Â Â Â Â Â Â Â Â Â Â Dr. Yancey, the proponent of the motion, began the hearing by stating, "The basis of our
motion is Broders v. Heise, the well-settled law of this state through the Texas Supreme Court,
asking that expert witnesses be limited in medical malpractice cases to testify in their area of
specialty." Yancey argued that, "Dr. Kovac is not now nor has he ever been even board eligible." 
Yancey went on to say, "[H]e doesn't even read his own patients' Pap smears . . . . [N]o one in a
medical setting, has ever asked Dr. Kovac to review pathology slides and write a report for them,
because they know that he's not qualified to do that." Yancey finished the argument by declaring,
"[W]e would ask that his testimony be limited only to obstetrics and gynecology, the area in which
he has been proven an expert witness."
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses, opposing the motion, focused the argument squarely on Dr.Â Kovac's
credentials as well. The Danielses began, "[U]nder the Rules of Evidence, testimony by experts
should be based upon their qualifications by knowledge, skill, experience, training or education; Rule
of Evidence 702."
Â Â Â Â Â Â Â Â Â Â Â Â The court interjected, "[W]hen you have an expert who -- an OB/GYN who doesn't even read
his own Pap smear slides, tell me why I should give him an area of expertise in front of a jury."
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses continued to point out Dr. Kovac's qualifications, "Dr. Kovac teaches residents
about pathology slides including bowel." The Danielses directed the trial court to deposition
testimony in which Dr. Kovac described his qualifications. However, the Danielses failed to
mention, even once, the time limits imposed by Article 4590i. 
Â Â Â Â Â Â Â Â Â Â Â Â The only brief reference to the time limitations of Article 4590i was by counsel for Yancey,
the proponent of the motion to limit the testimony. However, this is analogous to the well-established rule that one party may not use another party's objection to preserve an error where the
record does not reflect a timely expression of an intent to adopt the objection. Scott Fetzer Co. v.
Read, 945 S.W.2d 854, 871 (Tex. App.âAustin 1997), aff'd, Read v. Scott Fetzer Co., 990 S.W.2d
732 (Tex. 1998).
Â Â Â Â Â Â Â Â Â Â Â Â Further, the trial court made it clear that it was ruling solely on the qualifications of
Dr.Â Kovac and not on any other issue. During the hearing, the trial court stated, "[M]y consideration
is limited to his area of expertise as far as being able to testify about these pathology slides." The
trial court even gave the Danielses the opportunity to present an alternative argument by stating,
"And at this point, unless you have something else to show me, I'm going to grant the defendant's
request and limit his testimony on the pathology." The Danielses never presented another argument
to the trial court. 
Â Â Â Â Â Â Â Â Â Â Â Â Before issuing its ruling, the trial court again focused on Dr. Kovac's qualifications, saying,
"[F]or specialty testimony, it looks to me that they have to basically be engaged in that as their
specialty, such as, in this case, pathology." And on issuing its ruling, the trial court stated, "[M]y
ruling is going to be that I'm going to limit his testimony and that he's not going to be able to go
intoÂ -- unless the door is opened, he's not going to be able to go into the pathology slides." 
Â Â Â Â Â Â Â Â Â Â Â Â There is nothing in the record to indicate the trial court was presented with, or considered,
the contention that the Danielses now assert on appeal. The Danielses never filed a response to
Yancey's motion to limit the testimony of Dr. Kovac. At the hearing on the motion, Daniels never
complained or objected that the motion was in violation of statutory time limits. In fact, during that
hearing, the Danielses' counsel stated, "I do not question defense's ability to challenge the credibility
of my expert based on his knowledge, training and experience . . . ." Because the Danielses failed
to present this complaint to the trial court, this issue is waived and we will not consider it.
Â Â Â Â Â Â Â Â Â Â Â Â Alternatively, the Danielses assert that the motion was not filed within the time limitations
prescribed by the parties' agreed scheduling order. That agreed order set October 10, 2003, as the
deadline to file any motion to exclude or limit expert testimony and November 10, 2003, as the trial
date. Yancey's motion was not filed until January 7, 2004. 
Â Â Â Â Â Â Â Â Â Â Â Â On November 6, 2003, both parties filed an agreed motion for continuance. The trial court
then reset the trial date to January 12, 2004.
Â Â Â Â Â Â Â Â Â Â Â Â The agreed motion for continuance expressly mentioned Dr. Kovac's review of the pathology
slides and his new opinions based on that review. The motion's stated purpose was to provide extra
time for further discovery on that issue and other issues, and to extend the deadline for mediation,
as well as other matters.


 Therefore, one of the purposes of the agreed motion for continuance was
to allow discovery after the deadlines previously imposed by the agreed scheduling order. 
Â Â Â Â Â Â Â Â Â Â Â Â Further, several courts have held that a trial resetting has the effect of nullifying a deadline
set by a scheduling order. See J.G. v. Murray, 915 S.W.2d 548, 550 (Tex. App.âCorpus Christi
1995, no writ). Thus, the continuance effectively nullified the deadlines set by the agreed scheduling
order. 
Â Â Â Â Â Â Â Â Â Â Â Â Dr. Yancey's motion could not have violated the deadlines set by the agreed scheduling order
because it was filed after those deadlines ceased to exist. Accordingly, we dismiss the Danieless'
assertion that Yancey's motion was not filed within the time limitations prescribed by the agreed
scheduling order and deny the Danielses' first point of error.
Qualifications of Expert Witness
Â Â Â Â Â Â Â Â Â Â Â Â While Dr. Kovac testified extensively, the Danielses assert the trial court erred in ruling that
Dr. Kovac was not qualified to testify as an expert concerning pathology slides. At issue were
Dr.Â Kovac's conclusions based on his review of pathology slides of Kimberly's bowel. We hold that
the trial court did not err in limiting Dr. Kovac's testimony, and we deny the Danielses' second point
of error.
Â Â Â Â Â Â Â Â Â Â Â Â The determination of whether an expert witness is qualified to testify is left largely to the trial
court's discretion, and we will not disturb it on appeal absent a showing that the court abused its 
discretion. Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996); E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 558 (Tex. 1995). In determining whether an abuse of discretion
occurred, we look to see whether the trial court acted without reference to guiding principles or rules. 
Robinson, 923 S.W.2d at 558. A reviewing court cannot conclude that a trial court abused its
discretion merely because it would have ruled differently. Id.; Purina Mills, Inc. v. Odell, 948
S.W.2d 927, 932 (Tex. App.âTexarkana 1997, writ denied).
Â Â Â Â Â Â Â Â Â Â Â Â The proponent of the expert witness bears the burden of showing that the expert witness is
qualified and that the testimony is relevant to issues in the case, based on a reliable foundation, and
will assist the trier of fact. Robinson, 923 S.W.2d at 556. The offering party is required to establish
that the expert has the knowledge, skill, experience, training, or education regarding the specific
issue before the court which would qualify the expert to give an opinion on that particular subject. 
Broders, 924 S.W.2d at 153. In addition, the underlying foundation on which that opinion is based
must be reliable. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); Robinson,
923 S.W.2d at 555.
Â Â Â Â Â Â Â Â Â Â Â Â Yancey contends that the Danielses failed to present any evidence to the trial court before or
during trial that would support Dr. Kovac's qualifications, thereby waiving appeal of this issue. We
disagree that this issue was waived, but find the trial court did not abuse its discretion in excluding
Dr.Â Kovac's testimony regarding pathology slides. 
Â Â Â Â Â Â Â Â Â Â Â Â At the time the motion to limit Dr. Kovac's testimony was presented to the trial court before
the trial started, the trial court reviewed and considered deposition testimony from Dr. Kovac on this
issue. That evidence showed that Dr. Kovac at times reviewed pathology slides, that it was his
pattern to review a slide of the bowel in the course of gynecologic surgery, and that he usually
reviewed the slides with a physician who was board certified in gynecologic pathology. During the
trial, the Danielses offered, and the trial court excluded, a report written by Dr. Kovac opining that
the pathology slides of Kimberly confirmed his previous belief that the hysterectomy was
unnecessary and that an unrecognized bowel perforation led to the removal of a substantial amount
of her small bowel. Even though the Danielses presented some evidence of Dr.Â Kovac's
qualifications to interpret pathology slides and therefore the issue was not waived, the evidence on
that subject was very abbreviated. When the report of Dr. Kovac was offered and excluded, his
curriculum vitae had also been admitted into evidence, but it did not contain specific information
regarding pathology credentials. Dr. Kovac may be qualified to interpret pathology slides. However,
based on the record before the trial court as summarized above, the trial court acted within its
discretion in finding that the evidence was inadequate to establish that Dr. Kovac had the requisite
knowledge, skill, experience, training, or education regarding the interpretation of pathology slides
to qualify him to give an opinion on that specific subject. See Broders, 924 S.W.2d at 153. 
Â Â Â Â Â Â Â Â Â Â Â Â Even if the testimony of Dr. Kovac was improperly excluded, we do not believe that such an
error would be harmful. "No judgment may be reversed on appeal on the ground that the trial court
made an error of law unless the court of appeals concludes that the error complained of: (1) probably
caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1).
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses argue that the exclusion of Dr. Kovac's testimony concerning the pathology
slides resulted in the "exclusion of Appellants' only witness to the issue of causation of a bowel
perforation . . . ." We disagree. Dr. Kovac testified at length concerning his opinion that a bowel
perforation occurred during Dr. Yancey's surgery of Kimberly. An excerpt of that testimony follows: 
A.I strongly believe that there was a hole that was in the intestine of this
-- was made which caused her subsequent problems. 
Â 
Q. You think the hole occurred during Dr. Yancey's surgery? 
Â 
A. I think it did.

Dr. Kovac further testified that the adhesion disease and obstruction and the necessity to remove fifty
centimeters of Kimberly's small bowel were due to an unrecognized perforation of the small bowel
at the time of the hysterectomy, which caused leaking into the abdominal cavity. He further stated
that, at the time of the surgery to remove part of the intestine, Dr. Yancey and Dr. Merritt opened the
intestine looking for a perforation. This evidence was utilized by the Danielses' counsel in his
argument to the jury when he stated that puncturing of the bowel was a breach of the standard of
care. The only limitation placed on Dr. Kovac's testimony was that he was not allowed to interpret
the pathology slides. 
Â Â Â Â Â Â Â Â Â Â Â Â Considering all the evidence from Dr. Kovac that was admitted, even if the limitation of 
Dr.Â Kovac's testimony was error, we do not find that such limitation "probably caused the rendition
of an improper judgment." See id. Accordingly, we deny the Danielses' second point of error. 
Exclusion of Hearsay Testimony
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses asserts that the trial court erred in excluding certain testimony from Yancey's
witness, Dr. Merritt. We hold that the trial court did not err in excluding the testimony.
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses' counsel sought to ask Dr. Merritt whether he had told Kimberly, "Dr. Yancey
is scared to death that he's done something wrong to you." The trial court prohibited the Danielses
from introducing the statement. The court held that the statement was hearsay and no exception to
the hearsay rule applied.
Â Â Â Â Â Â Â Â Â Â Â Â The admission or exclusion of evidence is a matter within the sound discretion of the trial
court. Thus, we review this issue under an abuse of discretion standard. City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). 
Â Â Â Â Â Â Â Â Â Â Â Â The Danielses' only argument at trial, and now on appeal, is that the statement is not hearsay,
or that if it is hearsay, it falls within the "present sense impression" exception to the hearsay rule. 
See Tex. R. Evid. 803(1). Hearsay is a statement, other than one made by the declarant while
testifying at trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). 
The trial court could have reasonably found that the statement at issue was being offered to prove
the truth of the matter assertedâthat Dr. Yancey was afraid he had done something wrong to
Kimberly.
Â Â Â Â Â Â Â Â Â Â Â Â One of the exceptions to the hearsay rule is for present sense impressions. A present sense
impression is a statement describing or explaining an event or condition made while the declarant
was perceiving the event or condition, or immediately thereafter. Tex. R. Evid. 803(1). The
rationale for the exception stems from the statement's contemporaneity. Rabbani v. State, 847
S.W.2d 555, 560 (Tex. Crim. App. 1992). Without probative evidence in the record which
establishes the amount of time between Dr. Merritt's statement and his meeting with Dr. Yancey, we
cannot conclude that the statement falls within this exception. See 1.70 Acres v. State, 935 S.W.2d
480, 489 (Tex. App.âBeaumont 1996, no writ). The Danielses point us to no such evidence, nor
can we find any in the record, which would establish the contemporaneity of Dr. Merritt's statement. 
Â Â Â Â Â Â Â Â Â Â Â Â Even if such evidence was present in the record, it is not clear how Dr. Merritt's statement
would fit within this particular exception to the hearsay rule.


 Therefore, we cannot conclude the
trial court abused its discretion in finding that the statement did not meet the requirements of the
present sense impression exception to the hearsay rule. Accordingly, we deny the Danielses' final
point of error.
Â Â Â Â Â Â Â Â Â Â Â Â Having denied all of the Danielses' points of error, we affirm the judgment of the trial court.
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â September 6, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â October 25, 2005




-pagination:widow-orphan;tab-stops:center 3.25in'>
Â 

 On Appeal from the 173rd
Judicial District Court

 Henderson
County, Texas

   Trial Court
No. 2008-A-875

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  Driving
home from a Âpasture partyÂ at which she had consumed alcohol,
seventeen-year-old Brandi Christina Ross was tragically killed in an automobile
accident.Â  The party had been held,
without permission, in Henderson County,[1] on a
fifty-six-acre tract of land owned by Ryan C. Hoerauf.

Â Â Â Â Â Â Â Â Â Â Â  Following
BrandiÂs death, Julie Hyde and Chris Ross, individually and as representatives
of the estate of Brandi, collectively referred to herein as Hyde, filed a
wrongful death and survival action asserting negligence and gross negligence
against multiple parties,[2]
including Hoerauf and various entities to which Hoerauf had connections,
collectively referred to herein as Hoerauf.Â 
Hoerauf filed a motion for summary judgment, to which Hyde replied.Â  From a summary judgment granted in favor of
Hoerauf, Hyde appeals.

Â Â Â Â Â Â Â Â Â Â Â  We
must determine whether an absent landowner owes a duty to a trespasser who is
injured or killed after leaving the landownerÂs land.Â  Because Hoerauf owed no legal duty with
respect to the off-premises accident, we affirm the summary judgment of the
trial court.

Â Â Â Â Â Â Â Â Â Â Â  While
Hoerauf owned the property where the pasture party had taken place, no one at
the party was associated with Hoerauf or any related entity.Â  It is undisputed that the attendees of the
partyÂstudents and former students of Kemp High SchoolÂwere drinking alcohol. Â The only ÂadultsÂ at the party were in their
early twenties, all former Kemp High School students.Â  Previous pasture parties had taken place at
different locations on HoeraufÂs property during the summer months.Â  None of the partygoers had permission to be
on the property, described as being Âout in the middle of nowhere.Â[3]
Â Party attendees cut the fence to the
Hoerauf property on at least two different occasions in order to gain access to
the property. 

Â Â Â Â Â Â Â Â Â Â Â  Hoerauf
was aware, before the party that immediately preceded BrandiÂs death, that his
fence had been cut on two occasions and that there were tire tracks, empty beer
containers, and remnants of bonfires on his property.Â  Hoerauf was not aware that the trespassers
were teenagers.Â  After having twice
repaired the cut fence, Hoerauf began construction of heavy duty fencing for
the entire fifty-five acres.[4]Â  In the midst of this re-fencing process,[5]
the fateful party took place.Â  At the
time, Hoerauf, who lives in Odessa, was not aware that his land was being used
for an unauthorized gathering.Â  Neither
Hoerauf nor his property manager, Wes Hart, contacted the Henderson County SheriffÂs
Office to advise of a trespassing problem.Â 
No signs were posted to advise trespassers to keep off of the
property.Â  

Summary Judgment Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  We review de novo the grant of a
traditional motion for summary judgment.Â 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).Â  To prevail on a motion for summary judgment, the
movant must conclusively establish the absence of any genuine question of
material fact and that judgment is available as a matter of law. Â Tex. R.
Civ. P. 166a(c); Browning v. Prostok, 165 S.W.3d 336, 344 (Tex.
2005).Â  A movant must either prove all
essential elements of his or her claim, MMP, Ltd. v. Jones, 710 S.W.2d 59 (Tex. 1986), or
negate at least one essential element of the nonmovantÂs cause of action.Â  Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001).Â  In reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, indulge every reasonable
inference in favor of the nonmovant, and resolve any doubts in the nonmovantÂs
favor.Â  Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex.
2006).Â  

Â Â Â Â Â Â Â Â Â Â Â  When,
as here, a summary judgment does not specify the grounds on which it was
granted, the appealing party must demonstrate that none of the movantÂs
proposed grounds for summary judgment is sufficient to support the
judgment.Â  See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Strather v. Dolgencorp of Tex., Inc., 96
S.W.3d 420, 422 (Tex. App.ÂTexarkana 2002, no pet.).Â  Conversely, we will affirm the judgment if
any one of the theories advanced in the motion for summary judgment and
preserved for appellate review is meritorious.Â 
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

The Summary Judgment

Â Â Â Â Â Â Â Â Â Â Â  The motion for summary judgment
attacked HydeÂs cause of action for negligence and gross negligence for (1)
condoning or allowing alcohol to be provided to, and consumed by, minors on the
property, (2) Âliability of a Âpasture party,ÂÂ (3) Âallowing or contributing
to minors driving from the party after consuming alcohol,Â (4) Âproviding
alcohol to minors,Â (5) Âproviding control and oversight of an unrestricted
access to the property,Â and (6)Â Âcreating an unsafe or attractive
nuisance.Â[6]Â  The allegations of negligence and gross
negligence were grounded in premises liability.[7]Â  Hoerauf maintained that Brandi and others
attending the pasture party on his property were trespassers; he contended that
HydeÂs premises liability claims were conclusively negated by demonstrating
that he did not violate the duty owed a trespasserÂnot to cause injury to such
a person through willful, wanton, or grossly negligent conduct.

Â Â Â Â Â Â Â Â Â Â Â  In
response to HoeraufÂs motion, Hyde claimed that material fact questions existed
because Hoerauf was on notice of the activities on his property, as evidenced
by cut fences, tire tracks, remnants of bonfires, and beer cans and bottles
strewn about.Â  In essence, Hyde claimed
Hoerauf was on sufficient notice that pasture parties were taking place on his
property such that Hoerauf should have foreseen the risk of harm or injury based
on alcohol consumption by minors at such parties.[8]Â  Hyde claims that the evidence presented
material fact issues with respect to whether Hoerauf was willful, grossly
negligent, or negligent in failing to take effective measures to ensure that
such illicit gatherings were stopped.Â  It
is apparent that this was the only issue before the trial court on motion for
summary judgment.[9]


No Duty Was Owed in Off
-Premises Accident

Â Â Â Â Â Â Â Â Â Â Â  It
is fundamental that the existence of a legally cognizable duty is a
prerequisite to all tort liability.Â  Graff
v. Beard, 858 S.W.2d 918,
919 (Tex. 1993).Â  As in any other tort
action, Âa defendant in a premises case is liable only to the extent it owes
the plaintiff a legal duty.ÂÂ  Gen. Elec. Co. v. Moritz, 257 S.W.3d
211, 217 (Tex. 2008).Â  The existence of
duty is a question of law for the court to decide from the facts surrounding
the occurrence in question.Â  Greater
Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990); Moritz,
257 S.W.3d at 217.Â  If no duty exists,
then no legal liability for a premises liability claim can arise. Â Dukes v.
Philip Johnson/Alan Ritchie Architects, P.C., 252 S.W.3d 586, 592 (Tex.
App.ÂFort Worth 2008, pet. denied); Strunk v. Belt Line Rd. Realty Co., 225 S.W.3d 91, 99 (Tex. App.ÂEl
Paso 2005, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  Brandi
and the other partygoers were trespassers[10] on
HoeraufÂs property.Â  The only duty a
premises owner or occupier owes to a trespasser is not to cause injury
willfully, wantonly, or through gross negligence.[11]Â  Tex. Utils. Elec. Co. v. Timmons, 947 S.W.2d 191, 193 (Tex.
1997).Â  The issue of whether Hoerauf was
grossly negligent presumes the injury in question occurred on HoeraufÂs
property.Â  Because Brandi was not injured
by an unreasonably dangerous condition on HoeraufÂs property, there is no
evidence of actionable gross negligence.

Â Â Â Â Â Â Â Â Â Â Â  A
legal duty owed a trespasser on anotherÂs property arises from the ownership or
control of property on which the trespasser is harmed.Â  See
City of Denton v. Page, 701 S.W.2d 831, 835 (Tex. 1986) (possession and
control generally must be shown as prerequisite to liability); Hirabayashi v. N. Main Bar-B-Q, Inc.,
977 S.W.2d 704 (Tex. App.ÂFort Worth 1998, pet. denied); Tex. Jur. 3d Premises Liability Â§ 12 (2008) (duty of premises owner arises from
control of the premises).Â  If a
trespasser comes to no harm on the property on which he or she is trespassing,
but is harmed off-premises, a duty does not exist under a premises liability
theory of recovery.Â  Thus, a claim of
premises liability presumes that injury occurred on property owned by the
defendant.Â  Â[T]o prevail on a premises
liability claim a plaintiff must prove that the defendant possessed--that is,
owned, occupied, or controlled--the premises where injury occurred.ÂÂ  Wilson
v. Tex. Parks & Wildlife DepÂt,
8 S.W.3d 634, 635 (Tex. 1999) (per curiam) (emphasis added); Strunk, 225 S.W.3d at 98 (before duty
can be imposed, plaintiff must prove injury occurred on premises owned or
occupied by defendant).Â  To recover on a
premises defect theory, a person must have been injured by a condition on the
property.[12]Â  See
Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992); Am. Indus. Life Ins. Co. v. Ruvalcaba, 64 S.W.3d 126 (Tex.
App.ÂHouston [14th Dist.] 2001, pet. denied).Â 
A plaintiff must establish that the defendant had control over and
responsibility for the premises before a duty can be imposed on the
defendant.Â  See County of Cameron v.
Brown, 80 S.W.3d 549, 556
(Tex. 2002); Dukes, 252 S.W.3d at 592;
Hirabayashi, 977 S.W.2d at 706 (no
duty to provide patron with safe access to vacant parking lot across street
abutting defendantÂs premises).Â  The
control must relate to the condition or activity that caused the injury.Â  See Clayton W. Williams, Jr., Inc. v.
Olivo, 952 S.W.2d 523, 528
(Tex. 1997); Mayer v. Willowbrook Plaza
Ltd. PÂship, 278 S.W.3d 901, 909 (Tex. App.ÂHouston [14th Dist.] 2009, no
pet.).

Â Â Â Â Â Â Â Â Â Â Â  In
this case, no injury occurred on property owned, occupied, or controlled by
Hoerauf.Â  Here, the injury occurred on a
street or roadwayÂwe are not given the precise locationÂwhile Brandi was en
route to her home.Â  A property owner
generally does not owe a duty to one who leaves his or her premises and is
injured on adjacent highways.[13]Â  See
Dixon v. Houston Raceway Park, Inc., 874 S.W.2d 760, 762Â63 (Tex.
App.ÂHouston [1st Dist.] 1994, no writ) (property owner has no duty to ensure
the safety of persons who leave ownerÂs property and suffer injury on adjacent
highways); Gonzales v. Trinity Indus.,
Inc., 7 S.W.3d 303 (Tex. App.ÂHouston [1st Dist.] 1999, pet. denied).Â  The right of control over the injury-causing
condition or activity gives rise to the duty of care.Â  See
Olivo, 952 S.W.2d at 528 (discussing general contractorÂs liability for
independent contractorÂs negligent activities on premises).

Â Â Â Â Â Â Â Â Â Â Â  Because
Hoerauf had no right of control over the injury-causing activityÂdriving after
having ingested alcohol[14]
or even the party or drinking itselfÂHoerauf owed no duty of care to prevent
the accident.Â  Said another way, any duty
Hoerauf may have owed to Brandi in his capacity as a landowner pursuant to a
premises liability theory ceased when Brandi exited the Hoerauf property and
was no longer considered a trespasser thereon.

Â Â Â Â Â Â Â Â Â Â Â  After
reviewing the evidence in the light most favorable to Hyde, we determine Hyde
failed to allege or raise a fact question that the injury occurred on premises
owned or occupied by Hoerauf.Â  Hoerauf,
therefore, at the time of the accident, owed no duty to Brandi under a premises
liability theory of recovery.

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment of the trial court.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  February
24, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  March
2, 2011

Â 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.Â  See Tex. GovÂt Code Ann.
Â§ 73.001 (Vernon 2005).Â  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.Â  See Tex.
R. App. P. 41.3.

Â 





[2]The
original petition named Ryan C. Hoerauf, individually, Ryan C. Hoerauf, Inc.,
the OÂRyan family limited partnership, Ryan Properties, Inc., as a general
partner, by Ryan C. Hoerauf, president, OÂRyan Oil and Gas, Ryan Properties,
Inc., and Geico General Insurance Company as defendants.Â  The claims against Geico were nonsuited. 





[3]One
of the underage revelers testified that party attendees knew they did not have
permission to be on the property.

Â 





[4]The
new fence, constructed largely of steel pipe, was installed for the purpose of
keeping the property secure from trespassers.Â 
Construction of the new fence was the third attempt by Hoerauf to
address the problem.Â  While Hoerauf lives
in Odessa, he visited his Henderson County property in the summer of 2006 after
construction of the new fence was underway.Â 


Â 





[5]The
re-fencing process commenced approximately thirty days before BrandiÂs death. 

Â 





[6]On
appeal, neither party briefed the issue of attractive nuisance; we, therefore,
do not address it.Â  Tex. R. App. P. 38.1.

Â 





[7]Certain
aspects of the original petition could be construed to attempt to state a cause
of action for Âsocial hostÂ liability.Â 
This issue was not addressed in the motion for summary judgment or
response, and was not preserved for review.Â 
To the extent any such issues were before the trial court, summary
judgment would be wholly proper with respect to any claimed social host
liability.Â  Texas law does not recognize
a civil cause of action for the provision of alcohol to minors.Â  Reeder v. Daniel, 61 S.W.3d 359, 364 (Tex. 2001)
(social host has no duty not to make alcohol available to minors); Smith v.
Merritt, 940 S.W.2d 602,
605 (Tex. 1997) (social host has no duty to passenger to prevent
nineteen-year-old guest from drinking and driving); Dorris v. Price, 22 S.W.3d 42, 45 (Tex. App.ÂEastland 2000, pet.
denied) (no common-law duty to monitor alcohol consumption of minor guest who
hosts know will be driving).Â  Further,
the evidence in this case conclusively establishes that Hoerauf was not a
social host.





[8]Hyde
contends that the involvement of minors is readily inferred from the nature of
the events.Â  

Â 





[9]On
appeal, Hyde contends that Brandi was a licensee, rather than a trespasser,
based on HoeraufÂs summer-long failure to prevent such parties.Â  Hoerauf contends that, because the issue of
whether Brandi was a licensee was not properly before the trial court, it
should not be considered as a ground for reversal on appeal.Â  We agree.Â 
HydeÂs response to the motion for summary judgment did not assert
licensee status as a basis for avoiding the motion.Â  Any issues a nonmovant contends avoid the
movantÂs entitlement to summary judgment must be expressly presented by written
answer to the motion or by other written response to the motion.Â  Such issues are not expressly presented by
mere reference to summary judgment evidence.Â 
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993); Shumate v. Shumate, 310 S.W.3d 149, 152 (Tex. App.ÂAmarillo 2010,
no pet.).Â  Issues not expressly presented
to the trial court in writing shall not be considered on appeal as grounds for
reversal.Â  Tex. R. App. P. 166a(c).





[10]The
duty owed to a plaintiff in a premises liability case depends on the status of
the plaintiff at the time of the occurrence giving rise to the lawsuit.Â  W.
Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).Â  This status can be one of invitee, licensee,
or trespasser to the premises.Â  See
Rosas v. Buddies Food Store,
518 S.W.2d 534, 536 (Tex. 1975); Almanza
v. Navar, 225 S.W.3d 14, 20 (Tex. App.ÂEl Paso 2005, no pet.).

Â 





[11]The
parties here disagree on whether the evidence raises a material fact issue of
HoeraufÂs gross negligence.Â  Gross
negligence means an act or omission involving subjective awareness of an
extreme degree of risk, indicating conscious indifference to the rights,
safety, or welfare of others. Â State v. Shumake, 199 S.W.3d 279, 287
(Tex. 2006); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 21 (Tex. 1994).Â 
A property owner is grossly negligent only if he or she knows about an
unreasonably dangerous condition on his or her property and is consciously
indifferent to the safety of the persons affected by it. Â Simpson
v. Harris County, 951 S.W.2d 251, 254 (Tex. App.ÂHouston [14th Dist.] 1997,
no pet.); Brazoria County v. Davenport, 780 S.W.2d 827, 829 (Tex. App.ÂHouston [1st Dist.] 1989, no
writ).





[12]There
is no allegation of injury arising from defendantÂs activity or
instrumentality, rather than by a condition created thereby.Â  Keetch,
845 S.W.2d at 264.





[13]We
acknowledge caselaw that provides that the owner of property abutting a highway
has a duty to exercise reasonable care to avoid endangering the safety of
persons using the highway as a means of travel.Â 
See Alamo NatÂl Bank v. Kraus,
616 S.W.2d 908, 910 (Tex. 1981).Â  Such a
duty, the existence of which has not been alleged in this case, has been
limited to cases where an owner negligently releases upon the highway Âan
agency that becomes dangerous by its very nature once upon the highway.ÂÂ  Naumann
v. Windsor Gypsum, Inc., 749 S.W.2d 189, 191 (Tex. App.ÂSan Antonio 1988,
writ denied).

Â 





[14]Hoerauf
maintains that Brandi was intoxicated at the time of the fatal accident.Â  The record contains no evidence of
blood-alcohol content.Â  The record merely
shows that Brandi ingested alcohol prior to the accident.